IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LYSA L. STAPLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0506-CV-W-NKL |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is Plaintiff Lysa Stapleton's ("Stapleton") Motion for Summary Judgment [Doc. 7]. Stapleton seeks judicial review of the Commissioner's denial of her request for disability benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Having reviewed the record, the Court affirms the ALJ's decision.

On January 14, 2004, following a hearing, the Administrative Law Judge ("ALJ") found that Stapleton was not entitled to benefits under the Act and such determination became a final decision of the Commissioner upon the Appeals Council's denial of Stapleton's request for review. Judicial review is appropriate because Stapleton has exhausted her administrative remedies.

1

**I.     Standard of Review**

To be eligible for disability benefits, a claimant has the initial burden of establishing that he or she has a "disability" under 42 U.S.C. § 423(a)(D). *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (citation omitted). To meet this burden, a claimant must show that (1) he or she has a medically determinable physical or mental impairment that has lasted, or can be expected to last, for at least twelve months; and (2) he or she is unable to engage in any substantial gainful activity by reason of the impairment. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant must also demonstrate that the impairment has made him or her unable to return to past relevant work.

If the claimant meets these threshold requirements, the burden shifts to the Commissioner to show that, although the plaintiff cannot return to previous employment, he or she is able to engage in another kind of substantial gainful employment, considering the claimant's age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In an appeal from a final decision of the Social Security Administration, the Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Groeper v. Sullivan*, 932 F.2d 1234, 1237 (8th Cir. 1991). "Substantial evidence" is defined as relevant evidence that a reasonable mind might accept as adequate to support the ALJ's decision. *Smith v. Shalala*, 987 F.2d 1371, 1373-374

(8th Cir. 1993). This standard is less burdensome than a preponderance of the evidence. *Oberst v. Shalala*, 2 F.3d 249, 250 (8th Cir. 1993).

In determining whether substantial evidence supports the Commissioner's findings, the Court must look at the record as a whole and consider "evidence that detracts from the Secretary's decision as well as evidence that supports it." *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir. 1993) (citation omitted). In doing so, however, the Court must not resolve factual conflicts as if it were the trier of fact. *See Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987) ("questions of fact, including the credibility of a claimant's subjective testimony, are primarily for the Secretary to decide, not the courts."). Even if the Court would have weighed the evidence differently, it must affirm a denial of benefits if the ALJ's decision is adequately supported. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

**II.     Background**

After consideration of the entire record, the ALJ determined that Stapleton suffers from several severe impairments, including major depressive disorder, bipolar mood disorder, panic disorder, post-traumatic stress disorder, and borderline personality disorder. However, the ALJ found that none of these impairments meets or equals the criteria set forth for any impairment found in the Listing of Impairments. The ALJ further concluded that Stapleton retains sufficient residual functional capacity to perform light work requiring little public interaction, such as a light cleaner, mail sorter, and microfilm processor.

3

**III.    Discussion**

Stapleton argues that the ALJ overlooked evidence that she is likely to have episodes of decompensation that would preclude her from working.  Specifically, State Agent, Dr. David Hill, completed a review worksheet on which he indicated that Stapleton's condition would cause her to have one or two "repeated episodes of decompensation, each of extended duration." (Tr. 301.)  However, Dr. Hill's statement does not indicate that Stapleton would be unable to work for a period of twelve months, as Stapleton implies.  Rather, when the statement is read within the context of Dr. Hill's entire report, it is clear that Dr. Hill did not believe that Stapleton would be unable to work for the requisite length of time.  Indeed, in the same report, Dr. Hill indicated that Stapleton's impairments were not expected to last twelve months.  (Tr. 291.)

Stapleton also argues that the ALJ failed to account for Dr. England's December 15, 2003, medical source statement, in which he indicated that Stapleton would have "marked" restrictions in understanding and remembering detailed instructions, carrying out detailed instructions, interacting appropriately with supervisors, and responding appropriately to work pressures in a usual work setting; as well as "moderate" restrictions in interacting appropriately with the public, interacting appropriately with co-workers, and responding appropriately to changes in a routine work setting.  (Tr. 201.)  However, immediately preceding these remarks, Dr. England stated that these remarks describe Stapleton's limitations only for those periods in which she is experiencing decompensation.  (See Tr. 199.)  Specifically, Dr. England stated that the "[a]ttached ability to do work related

4

activities is rated for impairments during these periods [of decompensation] only." (Tr. 199.) Dr. England also attached a medical opinion form opining that, despite the gaps in the medical record, Stapleton would be capable of performing full time work:

> Gaps in the medical record exist from the [alleged onset date] (10-01-00) until the first medical/psychiatric symptom treatment of 01-07-01. Symptoms and treatment continue until 11-01. [There] is then a gap until 01-23-03. The last record(s) of treatment are from 10-02-03. The medical record does not appear to confirm twelve consecutive months of these symptoms requiring treatment.
> Exhibit 8Fp3 indicates claimant "lost her job" prior to 07-31-01. She was apparently working during about 4 months of Dr. Mazour's treatment for anxiety, depression and bipolar depression symptoms.
> Exhibit 13F suggest[s] improvement since her diagnoses of 01-23-03 and 03-03-03 when her GAF (45 and 40 respectively) suggest "serious" symptoms that could be expected to preclude [substantial gainful activity]. It therefore appears likely that 01-04 the claimant may be capable of at least simple repetitive full-time work that is low in stress and doesn't require extensive contact with people.

(Tr. 195) (citations omitted). Accordingly, Dr. England's report supports rather than refutes the ALJ's conclusions.

The Court has carefully examined the medical record for evidence suggesting that Stapleton might experience episodes of decompensation that would preclude her from gainful activity. Although the record reveals that Stapleton has had instances of disruptive behavior in the workplace, these episodes have occurred in jobs requiring extensive contact with people. The ALJ accounted for Stapleton's limitations when he found that Stapleton could not work in these positions and that she would be limited to jobs "involving minimal contact with the general public, co-workers and supervisors" and "no work involving any extensive use of the telephone." (Tr. 18.)

5

Although Stapleton has not had an extensive work history, the evidence that exists indicates that she could be successful in positions that allow her to avoid extended contact with other people. Stapleton was able to maintain a job at Peterson Manufacturing for about a year. (Tr. 363.) According to Stapleton, the reason she maintained that position for so long is that she "was able to move away from people . . . so that I wasn't in a group of people." (Tr. 372). Accordingly, substantial evidence supports the ALJ's determination that Stapleton can perform work as a light cleaner, mail sorter, or microfilm processor.[1]

## IV. Conclusion

An examination of the ALJ's decision reveals that it is supported by substantial evidence on the record as a whole. Accordingly, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment [Doc. 7] is DENIED. The decision of the Commissioner is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 27, 2005
Jefferson City, Missouri

---

[1] For similar reasons, the Court rejects Stapleton's argument that the ALJ failed to adequately account for the stress that Stapleton might experience during the workday. While there is no doubt that Stapleton experiences much stress when she is required to interact with other people in large groups or for extended periods of time, Stapleton has not attempted to explain why she would experience debilitating stress in a vocational environment in which she would have only limited contact with other people.